**UNITED STATES of America,**
**Plaintiffs–Appellee,**

v.

**Michael DANIEL and Jennifer Daniel,**
**Defendants–Appellants**

No. 99–5963, 99–5985.

United States Court of Appeals,
Sixth Circuit.

June 19, 2001.

NATHANIEL R. JONES, Circuit Judge.

On February 9, 1999, Michael and Jennifer Daniel were convicted of aiding and abetting an attempt to manufacture methamphetamine in violation of 18 U.S.C. § 2 (1999) and 21 U.S.C. § 846 (1999). The district court sentenced Michael Daniel to a term of ninety-seven months imprisonment, a four-year term of supervised release, and ordered him to pay $10,000 in restitution. Jennifer Daniel was sentenced to sixty months imprisonment, a four-year term of supervised release, and was ordered to pay $10,000 in restitution. Michael and Jennifer Daniel now appeal their convictions and sentences. For the reasons stated below, we AFFIRM the Daniels' convictions and their sentences.

In winter of 1998, Randy Shelton showed Tony Oldham how to make methamphetamine. Having learned the process, Tony Oldham and his wife Melinda Oldham set out to make methamphetamine on their own. Since Melinda did not want to manufacture the methamphetamine in their new apartment, the Oldhams decided to ask their friends Michael and Jennifer Daniel if they could use their trailer. On February 24, 1998, the Oldhams approached Jennifer Daniel. The Oldhams aver that she agreed to let them use the trailer, but that everyone agreed that Michael Daniel should also be consulted. According to Tony Oldham, Michael Daniel called him later that day and agreed to let the Oldhams use the trailer in exchange for some of the methamphetamine that they produced.

On that same day, Melinda Oldham purchased several items needed to manufacture methamphetamine and placed them in a green tupperware container. The Oldhams brought these materials along with some others to the Daniels' trailer. The Oldhams entered the trailer and proceeded

Before JONES, BATCHELDER, and CLAY, Circuit Judges.

to arrange the components. Tony Oldham placed a capped gallon jar with a mixture of ingredients on top of a kerosene heater in the bathroom of the trailer.

Melinda Oldham asserts that at this point, she and Jennifer Daniel left the Daniels' trailer to pick up some methamphetamine that she had left at Randy Shelton's trailer. According to Tony Oldham, he and Michael Daniel also left the trailer to steal some anhydrous ammonia so that they would have all of the chemicals necessary to produce methamphetamine. Oldham asserts that Michael Daniel dropped him off at the place where the anhydrous ammonia was stored and picked him up a short while later.

While the Oldhams and the Daniels were gone, the mixture that Tony Oldham had left on top of the kerosene heater exploded causing serious damage to the Daniels' trailer. A local police officer who was at a store called the Pantry in Drakesboro, Kentucky received word of the explosion and proceeded to the scene where he saw evidence of drug manufacturing. Jeremy Piper, a friend of Michael Daniel's, was also at the Pantry and overheard the report of the explosion. Piper followed the officer to the trailer and recognized that it was the Daniels' trailer. Seeing that neither of the Daniels were there, he decided to go to Michael Daniel's father's house in Powderly, Kentucky. On his way there, Piper saw Michael Daniel driving in the opposite direction. He stopped Daniel and told him about the explosion. Piper testified that he recalled telling a sheriff's deputy that there was an "image of somebody else" in the car with Michael Daniel and that it was not Jennifer Daniel. J.A. at 205. The government contends that given Tony Oldham's testimony, the "image" of the other person must have been Tony Oldham.

The next day, the Drug Enforcement Agency ("DEA") obtained consent to search the Daniels' trailer and found the components that had not been destroyed by the explosion. Scrapings taken from a wall and a door, contained ephedrine, the principal ingredient in methamphetamine according to the process that Tony Oldham planned to use. Several days later, the police searched the Oldhams' apartment. They found a shopping list and a Wal-Mart receipt for some of the lab components that Melinda Oldham had purchased.

The Oldhams were indicted with and eventually pleaded guilty to one count of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846, and one count of aiding and abetting an attempt to manufacture methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. The Daniels were also indicted with one count of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846, and one count of aiding and abetting an attempt to manufacture methamphetamine in violation of 21 U.S.C. § 846 and 18 U .S.C. § 2. However, they both pleaded innocent.

At trial, Tony and Melinda Oldham testified against the Daniels. Michael Daniel did not testify in his own defense, but instead, relied largely on an interview he gave to Cheyenne Albro, the director of a local narcotics task force. Albro testified that Michael Daniel told him that after he got home from work, he saw the Oldhams at the Pantry store. Michael Daniel said that Tony Oldham asked him if he could use his trailer to take a shower and he agreed. Daniel asserted that after a shopping trip, he and his wife returned to his trailer where he found Tony Oldham cooking methamphetamine. He claimed that he told Tony to get "that stuff" out of his trailer and that he was going to leave the house for 30 minutes and he wanted the material out of his house. A short time later, he and Jennifer met Jeremy Piper

who told them that the trailer had blown up. Michael Daniel admits that he told his wife to tell the police that she had been with her friend Debbie Ewing all day, and that he had been with his nephew all day. He claims that he and Jennifer decided to tell this story because "they didn't know what to do."

Jennifer Daniel also chose not to testify at trial. Through her attorney, she argues that she never agreed to let the Oldhams use her trailer to manufacture methamphetamine and that there is no credible evidence that she assisted in the acquisition, transportation, unloading, or assembly of the component parts of the methamphetamine laboratory or the actual cooking of the drug. Of course, Mrs. Daniel's story is contradicted by the Oldhams and other government witnesses. According to Jennifer Daniel's friend Deborah Ewing, Jennifer openly discussed the Oldham's request to manufacture methamphetamine in the Daniels' trailer. Ewing testified that after she spoke to Jennifer Daniel, she went to pick up her children at the Daniels trailer because she thought that Jennifer was going to let the Oldhams use the trailer to produce methamphetamine. At trial, Marlene Chanel testified that the day after the explosion, Jennifer Daniel asked her to lie for her. Chanel said that Jennifer asked her to say that she was at her house drinking on the night of the explosion even though she was not.

At the conclusion of the Daniels' jury trial, they were convicted of aiding and abetting the attempt to manufacture methamphetamine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 846. Subsequently, the district court sentenced Michael Daniel to a term of ninety-seven months imprison-

ment, a four-year term of supervised release, and ordered that he pay $10,000 in restitution. Jennifer Daniel was sentenced to sixty months of imprisonment, a four-year term of supervised release, and was ordered to pay $10,000 in restitution. On appeal, the Daniels challenge their convictions and their sentences on several independent grounds. We will address each of these arguments in turn.

## I. Sufficiency of the Evidence

On appeal, Jennifer Daniel argues that the government did not introduce sufficient evidence to convict her of aiding and abetting an attempt to manufacture methamphetamine. She points out that in order to support a conviction for aiding and abetting a criminal venture, the government must satisfy two elements. First, it must show that the defendant has committed an act which contributed to the commission of the crime. Second, it must establish that the defendant intended to aid in the commission of the crime. *See United States v. Frazier,* 880 F.2d 878, 886 (6th Cir.1989). Mrs. Daniel asserts that the government did not prove either of these elements and that the district court should have granted her a judgment of acquittal or ordered that she be given a new trial.

This Court reviews sufficiency of evidence by viewing the evidence in the light most favorable to the government, and asking if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)(emphasis in original).[1] Upon conducting this inqui-

---

1. "[N]either the district court nor the court of appeals may make independent determinations regarding the credibility of witnesses or the weight to be given [circumstantial] evidence." *United States v. Davis,* 981 F.2d 906,

908 (6th Cir.1992). Rather, "[i]ssues of witness credibility ... are strictly for the jury to determine." *United States v. Evans,* 883 F.2d 496, 501 (6th Cir.1989).

ry, we find that the government has put forth sufficient evidence to convince a rational trier of fact that Jennifer Daniel is guilty of aiding and abetting an attempt to manufacture methamphetamine. The government has introduced significant evidence that Jennifer Daniel committed an act which contributed to the commission of a crime and that she intended to aid in the commission of this crime.

### A. Act Contributing to the Commission of A Crime

■ At trial, Melinda and Tony Oldham testified that they spoke to Jennifer Daniel about making methamphetamine in her trailer before they spoke to Michael Daniel. The Oldhams both stated that Jennifer Daniel agreed to allow them to make the drug. On appeal, Jennifer Daniel argues that her agreement with the Oldhams did not contribute to the commission of a crime because her husband, Michael Daniel, was ultimately responsible for the decision to allow the Oldhams to manufacture drugs in their trailer.

The fact that the Oldhams waited to get Michael Daniel's approval and that he may have had the power to veto the plan does not prove that Jennifer Daniel's initial agreement did not contribute to the commission of a crime. Given the evidence that the Oldhams consulted both Michael and Jennifer Daniel, a rational jury could have inferred that the agreement of both Michael and Jennifer Daniel was necessary

for this scheme to go forward. Accordingly, there was sufficient evidence for a jury to conclude that Jennifer Daniel's agreement was an act that contributed to the commission of a crime.

### B. Intent to Aid in the Commission of a Crime

■ Jennifer Daniel's assertion that the government has not introduced sufficient evidence to prove that she intended to aid in the commission of a crime is also unpersuasive. As noted above, both Tony and Melinda Oldham testified that Jennifer Daniel agreed to allow them to produce methamphetamine in their trailer in exchange for a portion of the drugs.[2] Jennifer Daniel's intent to aid in the commission of a crime was also bolstered by the testimony of Marlene Chanel. Ms. Chanel testified that shortly after the explosion, Jennifer Daniel asked her to tell others that they had been together on the night of the explosion in order to provide her with an alibi. Given the evidence of an agreement between Jennifer Daniels and the Oldhams, a rational jury could have easily concluded that Jennifer Daniel intended to aid in the commission of a crime.[3] A rational jury might have also concluded that Jennifer Daniel's attempt to get Chanel to lie for her was further evidence of her guilt.

### II. Attempt Instruction

■ The Sixth Circuit Pattern Instruction on Attempt instructs jurors that in

---

**2.** This testimony was largely confirmed by Debbie Ewing who testified that Jennifer Daniel told her that Melinda Oldham had offered her money if she would allow her and her husband, Tony Oldham, to make methamphetamine in the Daniels' trailer. J.A. at 260.

**3.** Jennifer Daniel also argues that the fact that the jury did not convict her of conspiracy to manufacture methamphetamine demonstrates that there was insufficient evidence to prove that she was guilty of aiding or abetting the

attempt to manufacture methamphetamine. However, it is well-established that inconsistency of verdicts does not provide a basis for reversal of a conviction. *See United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *United States v. Clemmer,* 918 F.2d 570 (6th Cir.1990); *United States v. Silva,* 846 F.2d 352, 357–58 (6th Cir.1988). Furthermore, it is worth noting that the jury did not vote to acquit Jennifer Daniel of conspiracy, rather they were deadlocked on the issue.

order for them to find a defendant guilty of attempting to commit a crime, they must be convinced that the government has proven, beyond a reasonable doubt, that the defendant intended to commit the crime in question, and that the defendant "did some overt act that was a substantial step towards committing the crime." Pattern Criminal Jury Instruction, § 5.01, Sixth Circuit (1991). The Pattern Instruction also explains that merely preparing to commit a crime is not a substantial step. Rather, the defendant's conduct "must go beyond mere preparation," and "must strongly confirm" that he intended to commit the crime in question. *Id.* At trial, Mr. Daniel tendered an instruction that used the word "unequivocally" in place of the word "strongly." He pointed out that this language has been endorsed by the Sixth Circuit in several cases. *See United States v. Pennyman,* 889 F.2d 104, 106 (6th Cir.1989); *United States v. Dolt,* 27 F.3d 235, 239 (6th Cir.1994). After considering Daniel's request, the district court decided to use the language of the Sixth Circuit Pattern Instruction. The court explained that it was following the commentary in the pattern instructions, which discuss the *Pennyman* case that Mr. Daniel cited but recommends the use of the word "strongly," instead of "unequivocally."

■ On appeal, Michael Daniel argues that the district court erred because a court must deliver a requested instruction "when that requested charge is a correct statement of law, is not substantially covered by the charge already submitted to the jury, and concern[s] a point so important to the trial that the failure to give it substantially impaired presentation of the defendant's theory of the case." *United States v. Chowdhury,* 169 F.3d 402, 405 (6th Cir.1999). As noted above, Michael Daniel maintains that he found the Oldhams in his trailer cooking methamphetamine and told them that they had thirty minutes to get out. He contends that the district court's failure to instruct the jury that his conduct must "unequivocally" confirm that he intended to manufacture methamphetamine substantially impaired his theory of the case. According to Daniel, the court's instruction allowed the jury to find that his failure to tell the Oldhams to leave immediately "strongly". confirmed his intention to manufacture methamphetamine. On the other hand, he suggests that such a failure would not support the conclusion that his actions "unequivocally" confirm his intention to manufacture methamphetamine. This Court "reviews the jury charge in its totality to determine whether it fairly and adequately submits the issues and law to the jury." *United States v. Milligan,* 17 F.3d 177, 182 (6th Cir.1994).

Although Mr. Daniel's preference for the term "unequivocally" is understandable, he has failed to demonstrate that his requested instruction was not "substantially covered" by the charge that the district court submitted to the jury or that the district court's decision to use the word strongly "substantially impaired" the presentation of his theory of the case. If the jury had believed Michael Daniel's assertions that he had no prior knowledge of the plan to manufacture methamphetamine, and that when he found the Oldhams manufacturing methamphetamine he told them that he was going to leave the trailer for thirty minutes, and that he wanted the material out of his house, they could have easily found that his conduct did not "strongly" confirm that he intend to manufacture of methamphetamine.

On the contrary, it seems that the reason why the jury convicted Michael Daniel was not because his theory was substantially impaired by an instruction, but rather because they did not believe his version of the facts, which was based almost entirely on a self-serving interview that he

gave to Cheyenne Albro. As noted above, Michael Daniel's story was contradicted by the Oldhams' testimony that he explicitly agreed to allow the Oldhams to manufacture methamphetamine in his trailer and that he helped steal anhydrous ammonia. His credibility was also undermined by the fact that he encouraged his wife to lie about their whereabouts on the day of the crime.

### III. Evidence of the Daniels' Prior Drug Use

■ At trial, the government proposed that the Oldhams be allowed to testify that the reason why they approached the Daniels about making methamphetamine in their trailer was that they had used methamphetamine with the Daniels in the past. The Daniels objected to this evidence on the grounds that this evidence was rule 404(b) evidence and that they had not received adequate notice of this evidence. The court briefly addressed this issue and found that the evidence was "probably not 404(b)" evidence and that its "probative value . . . outweighs the prejudicial effect." JA at 182. Therefore, the court allowed the evidence to be admitted.

On appeal, the Daniels argue that the court erred by finding that this evidence was not 404(b) evidence. As the Daniels point out, rule 404(b) of the Federal Rules of Evidence states that,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

According to the Daniels, the evidence of their prior use of methamphetamine was clearly 404(b) evidence because it cast them in a negative light and led the jury to believe that the Daniels were the type of people who would engage in a scheme to manufacture the drug.[4]

---

4. The government asserts that rule 404(b) gives the court discretion to admit evidence of prior bad acts for purposes other than to show the defendant's bad character and convince the factfinder that this character flaw led the defendant to commit the crime at issue. Although the government admits that the evidence of the Daniels' prior drug use does not fall under any of the permissible purposes explicitly listed in rule 404(b), it points out that these purposes are not exclusive. *See United States v. Acosta–Cazares,* 878 F.2d 945, 948 (6th Cir.1989). The government contends that in this case the evidence of prior bad acts is permissible in order to explain why the Oldhams choose to ask the Daniels to use their trailer. However, the validity of this purpose is somewhat dubious.

As the defendants point out, the government's assertion that Oldhams asked the Daniels to help them manufacture methamphetamine because they had used drugs with the Daniels in the past is at its core an assertion that the Daniels' drug use gave the Oldhams a reason to believe that the Daniels would be amenable to a scheme to manufacture methamphetamine. This assertion comes dangerously close to directly alleging that the Daniels prior bad acts demonstrate that they had a propensity to engage in the crime in question.

Furthermore, unlike the permissible purposes recited in rule 404(b), which are directly relevant to the defendant's guilt, the purpose offered by the government, to explain what prompted the Oldhams to ask the Daniels to use their trailer, seems rather tangential to the case against the Daniels. While it is true that this evidence corroborates the Oldhams' testimony that they asked the Daniels to use their trailer, it is not clear why this evidence was necessary because the fact that the Oldhams had a reason to ask the Daniels to use their trailer was not in dispute. As Michael Daniel points out, there were many reasons why the Oldhams may have asked them to use their trailer. For example, it is undisputed that Tony Oldham and Michael Daniel were lifelong friends.

Assuming *arguendo* that the district court erred when it admitted evidence of the Daniels' prior drug use and that the defendants properly objected to this error at trial,[5] the defendants must demonstrate that this error was not "harmless" in order to garner a reversal. *United States v. Daniel*, 134 F.3d 1259, 1262 (6th Cir. 1998)(when an error is not of a constitutional dimension, harmless error analysis is applied). In order to show that an error is not "harmless" the defendant must demonstrate that "it is more probable than not that the error materially affected the verdict." *Id.* at 1264 (citing *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir.1993)). Defendants have not made such a showing in this case.

At trial, both Tony and Melinda Oldham testified that the Daniels agreed to allow them to use their trailer to produce methamphetamine. Although the Oldhams' testimony may have been motivated by a desire to convince the prosecutor to recommend a sentencing reduction, there was no evidence that the government promised them any benefit in exchange for their testimony. Furthermore, the Oldhams' testimony was corroborated by the testimony of Deborah Ewing. As noted above, she testified that Jennifer Daniel told her that the Oldhams had approached her about manufacturing methamphetamine and stated she went to the Daniels' trailer to pick up her children because she believed that Jennifer Daniel was going to let the Oldhams use her trailer.

In light of this evidence, Michael Daniel's assertion that Tony Oldham asked to take a shower in his trailer and then proceeded to cook methamphetamine when the Daniels left seems rather farfetched.

The truthfulness of the Daniels' version of the facts is also undermined by Michael Daniel's admission that he told Jennifer Daniel to lie about their whereabouts on the day of the crime and Marlene Chanel's testimony that Jennifer Daniel asked her to say that they were together on the day in question even though they were not. Given this substantial evidence against the defendants, they have not demonstrated that it is "more probable than not" that the admission of the evidence of their prior drug use "materially affected the verdict." *See Daniel*, 134 F.3d 1259, 1264. Accordingly, the district court's decision to admit this evidence was harmless error.

## IV. Minor Participant

Sentencing Guideline § 3B1.2 (b) provides that the court shall reduce the offense level of minor participants. UNITED STATES SENTENCING GUIDELINE MANUAL ("U.S.S.G.") § 3B1.2 (b). A minor participant is defined as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n. 3; *United States v. Lloyd*, 10 F.3d 1197, 1220 (6th Cir.1993). At sentencing and on appeal, Michael Daniel has argued that he was a minor participant in the crimes for which he was convicted and that his offense level should be reduced. He claims that he did not know that Tony Oldham was using his trailer to make methamphetamine until he "walked in on him doing so the night of the explosion." Based on this version of the facts, he claims that his role in the crime was significantly smaller than that of Tony Oldham who learned how to cook methamphetamine and Melinda Oldham who

---

5. At trial, the defendants objected to the admission of the evidence of their prior drug use on the grounds that they were not given adequate notice of this evidence. However, there is no indication that either defendant specifically objected to the district court's finding that this was not 404(b) evidence or the court's determination that the evidence's "probative value ... outweighs the prejudicial effect." J.A. at 182.

**364**

helped gather some of the components necessary to produce the drug. This Court reviews the district court's ruling on the defendant's role in an enterprise for clear error. *United States v. Perry*, 908 F.2d 56, 58 (6th Cir.1990).

If Michael Daniel's self-serving assertions were the only evidence introduced at trial, they might be sufficient to show that the trial court committed clear error by refusing to grant him minor participant status. However, Michael Daniel's version of the facts is contradicted by substantial evidence presented at trial. As noted above, Tony and Melinda Oldham testified that Michael and Jennifer Daniel agreed to allow them to make methamphetamine in their trailer in exchange for a share of the drugs. There was also evidence that Michael Daniel assisted Tony Oldham in bringing the necessary components into the trailer and that Michael Daniel assisted Tony Oldham in stealing anhydrous ammonia, an important component in making methamphetamine. Based on this evidence, the district court found that although Michael Daniel was less culpable than Tony Oldham who took charge of actually manufacturing the drug, he was more culpable than Jennifer Daniel and as culpable as Melinda Oldham who purchased (rather than stole) some of the components necessary to produce methamphetamine. Accordingly, the district court held that Michael Daniel was not a minor participant because he was not less culpable than "most other participants." Given the evidence noted above, this finding is not clearly erroneous.

## V. Restitution

■ At sentencing, the district court held Michael and Jennifer Daniel and Tony and Melinda Oldham jointly and severally liable to pay restitution damages to the insurer of the damaged trailer. On appeal, the Daniels argue that the district court did not have statutory authority to impose restitution on them. They also assert that the district court erred by ordering them to pay $10,000 in restitution because there was insufficient evidence to suggest that they could pay that amount. This Court reviews the availability of restitution *de novo* and reviews the amount of restitution ordered for abuse of discretion. *United States v. Guardino*, 972 F.2d 682, 686 (6th Cir.1992).

### A. Statutory Availability of Restitution

■ Federal courts may not impose restitution unless explicitly authorized to do so by statute. The Victim and Witness Protection Act, 18 U.S.C. § 3663 (1999), provides such authority in cases involving certain crimes. This statute states,

> The court, when sentencing a defendant convicted of an offense under this title [title 18], section 401, 408(a), 409, 416, 420, or 422(a) of the Controlled Substances Act (21 U.S.C. 841, 848(a), 849, 856, 861, 863) ..., or section 46312, 46502, or 46504 of title 49, other than an offense described in section 3663A(c), may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense ....

18 U.S.C. § 3663(a)(1)(A).

On appeal, the Daniels argue that by its terms section 3663(a) did not give the district court authority to impose restitution on them because they were convicted under 21 U.S.C. § 846 and 18 U.S.C. § 2. First, the Daniels point out that the plain language of section 3663(a) clearly does not authorize restitution for defendants convicted of violating 21 U.S.C. § 846. Second, although the Daniels admit that this statute authorizes the district court to impose restitution for "offenses" under title 18, they contend that section 3663 does not authorize restitution for defendants

convicted of aiding and abetting under 18 U.S.C. § 2, because this section merely expands other offenses by making accessories liable as principals and does not constitute a separate offense.

Although the Daniels' interpretation of section 3663(a) is not entirely unpersuasive, it is irrelevant. Section 846 explicitly provides that "any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." In the instant case, the offense that was the object of the attempt was the crime of "manufacturing a controlled substance" (methamphetamine) under 21 U.S.C. § 841. Since violators of section 841 are clearly subject to restitution damages under the section 3663(a), so are the Daniels. *See* 18 U.S.C. § 3663(a)(1)(A).

### B. Amount of Restitution

■ Citing this Court's decision in *United States v. Dunigan,* 163 F.3d 979 (6th Cir.1999), Michael and Jennifer Daniel also contend that the district court erred in ordering them to pay $10,000 in restitution because there was not sufficient evidence to suggest that they had the ability to pay that amount. In *Dunigan,* a federal district court ordered an indigent defendant to pay $311,605 in restitution over three years. *See Id.* at 981. On appeal, the Sixth Circuit vacated the restitution order on the grounds that the district court had "absolutely no basis in the record" to conclude that Dunigan would be able to satisfy his obligation. *Id.* at 982. The Daniels emphasize that in the instant case the district court has ordered them to pay $10,000 in restitution "in full immediately." They assert that there is no way that they could comply with this order since neither of them has any assets and they are both currently incarcerated.

We agree that it is not possible for the Daniels to meet their entire $10,000 restitution obligation at the present time. If the district court's order required the defendants to pay $10,000 immediately, we would be compelled to reverse the order. However, we do not believe that the district court's order requires such a payment. While the district court did order the Daniels and the Oldhams to pay restitution "immediately" the court also issued a special instruction waiving the defendants' liability for interest on the restitution damages. *See* J.A. at 47–48, 55. This arrangement will effectively allow the Daniels to pay the restitution damages over a flexible period of time. We believe that under this arrangement there is ample reason to believe that the Daniels will be able to meet their obligations.

Unlike Mr. Dunigan, who faced a penalty of over $300,000, the Daniels each face a maximum penalty of only $10,000. Since their liability for these damages is joint and several with their co-defendants, Tony and Melinda Oldham, it is possible that their ultimate burden will be considerably less than $10,000 each. *See Id.* As the district court pointed out, Michael Daniel held a "good job" as a truck driver for L.A. Johnson Trucking from October of 1996 through September of 1998. Given his ability to earn money in the past it is not unreasonable to think that he would be able to pay these restitution damages in the future. Although Jennifer Daniel dropped out of high school and does not have a very impressive employment history, she does not seem to have any substantial outstanding debt and may also be able to fulfill her obligation after she is released from prison. Accordingly, we hold that the district court did not commit clear error in determining the amount of restitution in this case.

## VI. Conclusion

For the reasons stated above, we AF-FIRM Michael and Jennifer Daniel's convictions and sentences.