*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0183P (6th Cir.)
File Name:  00a0183p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 98-6522

CHESTER L. ADAMS,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20267—Julia S. Gibbons, Chief District Judge.

Argued:  March 6, 2000

Decided and Filed:  June 1, 2000

Before:  SILER and GILMAN, Circuit Judges;
O'MALLEY, District Judge.[*]

———————

## COUNSEL

**ARGUED:**  Stephen B. Shankman, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN
DISTRICT OF TENNESSEE, Memphis, Tennessee, for

———————

[*]The Honorable Kathleen M. O'Malley, United States District Judge
for the Northern District of Ohio, sitting by designation.

Appellant.  Tony R. Arvin, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant.  Tony R. Arvin, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

———————————

## OPINION

———————————

RONALD LEE GILMAN, Circuit Judge.  Chester Adams and his brother, Terry Adams, committed a series of carjackings and armed robberies in Memphis, Tennessee during August and September of 1996.  (For the sake of simplicity, this opinion will refer to the two brothers by their first names.)  On June 25, 1998, a federal grand jury in the Western District of Tennessee returned a twenty-six count indictment against Chester, charging him with carjacking, robbery, attempted robbery, and possessing firearms and ammunition as a convicted felon.  Chester was tried and convicted on all counts.  The district court sentenced him to a term of life plus 205 years, and he was ordered to pay $23,890 in restitution.  In this appeal, Chester raises four challenges to his conviction, sentence, and restitution order.  For the reasons set forth below, we **REVERSE** the district court's sentencing on one of the four counts of firearms possession and **AFFIRM** as to the remainder of the judgment, sentence, and restitution order.

## I.  BACKGROUND

### A.   Factual background

The first known crime committed by the Adams brothers was a carjacking on August 15, 1996, during which they held up the driver of a black 1996 Lexus at a self-serve carwash in midtown Memphis.  The brothers next attempted to rob a Kroger grocery store.  Early in the morning of August 26,

payment would be impossible.  *Id*. at 982.  Chester, on the other hand, was only twenty-nine years old at the time of his sentencing and has a life sentence during which to pay off his $23,890 restitution obligation through the Federal Bureau of Prisons' Inmate Financial Responsibility Program.  Under these circumstances, the amount of the restitution order does not constitute an abuse of the district court's discretion.

## III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the district court's sentencing as to count twenty-six and **AFFIRM** as to the remainder of the judgment, sentence, and restitution order.

finding, we affirm Chester's three-level sentencing enhancement.

## D.   Restitution order

Chester finally argues that, pursuant to the recent case of *United States v. Dunigan*, 163 F.3d 979 (6th Cir. 1999), the district court erred in ordering him to pay $23,890 in restitution. This court in *Dunigan* held that a district court must consider "the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate" when ordering restitution. *Id*. at 981. Chester contends that "[t]he district court made no finding that the defendant had even a minimal chance to pay almost $24,000 in restitution."

We review de novo whether a restitution order is legally permissible. *See Dunigan*, 163 F.3d at 981. If a restitution order is appropriate, the amount of restitution will not be disturbed unless the district court abuses its discretion. *See id*. We conclude that the district court in the present case did not abuse its discretion in fixing the amount of restitution. First, the burden is on the defendant to demonstrate that a restitution order far exceeds his resources and earning potential. *See id*. at 982; *see also United States v. Frost*, 914 F.2d 756, 774 (6th Cir. 1994) (holding that a district court need not make specific findings concerning a defendant's financial condition). Chester has not made such a showing in this case. Second, a restitution order is permissible even if the defendant lacks the present ability to pay. *See United States v. Blanchard*, 9 F.3d 322 (6th Cir. 1993).

The fact situation presented in *Dunigan* was unusual and is distinguishable from that of the present case. In *Dunigan* the district court ordered the indigent defendant, whose prior income had been under $2,000 a month, to pay the relatively enormous sum of $311,605 within the three-year period of his supervised release. *See Dunigan*, 163 F.3d at 980. On appeal, this court found that, "absent a miracle," such a

1996, with the store still closed, they climbed atop the building and began cutting a hole through the roof. They were armed with 9-millimeter handguns and were carrying police radio scanners. As they were cutting the hole, however, it began to rain, and the water leaking through the hole set off the store's alarm. At that point, the Adams brothers abandoned their plan.

On August 29, 1996, the brothers successfully carried out a similar plan at the nearby Walgreens drugstore. They cut a hole in the store's roof before the store opened and Terry descended into the store. Chester waited across the street and served as a look-out. When the manager and bookkeeper arrived, Terry forced them to open the store's safe at gunpoint. He then tied up the employees and fled with the money.

The Adams brothers' next crime was another carjacking on the night of August 31, 1996, during which they held up a woman and stole her Nissan Pathfinder. Then, on September 3, 1996, the brothers robbed an employee of Simply Six Fashions as she was attempting to deposit the store's receipts at a bank in midtown Memphis.

Two days later, the brothers entered the EZ Pawn Shop in Memphis wearing masks and carrying handguns. They sprayed the shop's employees and customers with pepper spray and stole twelve handguns from the store.

At approximately 2 a.m. on the morning of September 12, 1996, Memphis Police Officer Donna Roach spotted the stolen black Lexus in the parking lot of an Exxon Tigermart. Officer Roach saw Terry get into the Lexus with Chester. She then pulled up beside the vehicle to get a better look at the two individuals in the front seat. At the time, Officer Roach was in plainclothes and was driving an unmarked car. When the brothers drove off, Officer Roach followed them. At first, the brothers drove slowly, making numerous turns onto side streets. They then picked up speed, while still making many turns. Officer Roach followed throughout. Finally, the brothers pulled into the driveway of a house and stopped.

Officer Roach parked her car a block away. Chester and Terry then opened fire on Officer Roach's car from inside the Lexus, firing ten to fifteen shots. Officer Roach ducked beneath her dashboard, quickly backed away, and called for assistance.

Police officers found the Lexus about a half hour later. It had been set on fire in an abandoned lot. The officers discovered a Ruger 9-millimeter handgun at the right rear tire of the car. Later in the day on September 12, 1996, the Adams brothers carjacked a Ford Taurus at a convenience store in midtown Memphis. The next day, they robbed the manager of a Fox Photo store as he was entering a midtown Memphis bank to make a deposit. Then, on September 20, they committed two more armed carjackings, stealing a Honda Civic and a Toyota Camry.

On the following morning, September 21, the brothers robbed an Ace America Cash Express store. As the store's clerk was unlocking the door, Chester grabbed her and pulled her inside the store. He then forced her, at gunpoint, to open the store's safe.

On the night of September 25, police officers observed the Adams brothers in midtown Memphis. When approached by the officers, the two split up and ran. Chester was caught shortly thereafter by two of the officers. As he ran, he discarded a maroon shaving kit bag that was found to contain the keys to two of the carjacked vehicles and approximately three thousand dollars in cash wrapped in an Ace America Cash Express wrapper. Officers also found a Jennings Bryco 9-millimeter handgun and a police scanner in a weeded area that Chester had run through moments before being captured. The handgun was later determined to be one of the guns taken in the EZ Pawn Shop robbery.

Other officers chased after Terry. When Terry turned and pointed a gun at a pursuing officer, the officer shot and wounded him. Terry was found to have a 9-millimeter handgun, a police scanner, and the driver's license of one of the carjacking victims in his possession. The next day, on

three counts of firearms possession because there was no showing that the guns were stored or acquired separately). This will not affect Chester's overall sentence, however, because Chester was sentenced to concurrent life terms on these four counts.

## C.  Sentencing as to count fourteen—enhancement for assaulting a police officer

Chester received a three-level enhancement on count fourteen (one of the firearm possession counts) for assaulting Officer Roach by firing at her car on the night of September 12, 1996. The Sentencing Guidelines provide for an enhancement if the defendant, "knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury." U.S.S.G. § 3A1.2(b). Chester argues on appeal that he did not know or have reasonable cause to believe that Officer Roach, who was not in uniform and was driving an unmarked car on the night of September 12, was a law enforcement officer.

The district court found that Chester did know or have reasonable cause to believe that Officer Roach was a police officer. This finding was based on a "whole sequence of events," during which Officer Roach first pulled up alongside the Adams brothers' car and watched them, then pursued them along a circuitous route for an extended time, and came to a stop a block away when the brothers turned into a driveway. Finally, the district court noted that the brothers fired ten to fifteen shots at Officer Roach's car.

A district court's finding at a sentencing proceeding that the defendant knew or had cause to believe that he was assaulting a law enforcement officer will not be disturbed unless it is clearly erroneous. *See United States v. Farrow*, 198 F.3d 179, 196 (6th Cir. 1999). After observing Officer Roach's investigative behavior and then opening fire on her vehicle, Chester cannot plausibly maintain that he reasonably believed Officer Roach to simply be an inquisitive civilian. Because the totality of the circumstances supports the district court's

review this omission under the "plain error" standard. *See United States v. Christian*, 786 F.2d 203, 213 (6th Cir. 1986) (holding that "[a]ny objection to lack of instruction was waived by defendant's failure to make timely request for a limiting instruction" and proceeding to review the omission for "plain error affecting substantial rights"). "Plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *See United States v. Piccolo*, 723 F.2d 1234, 1238 (6th Cir.1983).

In light of the fact that both the indictment and the evidence demonstrated incontestably that the firearms charged in counts thirteen, fourteen, and twenty-five were possessed in separate places and at separate times, we do not believe that the district court's failure to instruct as to separate possession constituted a grave miscarriage of justice. *See United States v. Bonavia*, 927 F.2d 565, 570-71 (11th Cir. 1991) (holding that a district court's failure to instruct the jury regarding separate possession was not plain error where there was sufficient evidence adduced to find that the defendant possessed the two weapons on separate occasions).

Chester does raise a valid objection, however, to the appropriateness of count twenty-six of the indictment as a separate charge. Chester dropped or discarded the Smith & Wesson .380-caliber handgun—charged in count twenty-five—when he jumped out of the moving pickup truck on September 7, 1997. When the police caught up with him a few minutes later, they discovered a .380-caliber ammunition clip on his person, for which Chester was charged separately in count twenty-six. Aside from this brief gap in the time of possession, the government introduced no evidence demonstrating that Chester stored or acquired the ammunition clip separately from the gun.

Because there was no showing that Chester separately stored or acquired these items, we reverse Chester's conviction on count twenty-six. *See Rosenbarger*, 536 F.2d at 721 (reversing the defendant's conviction on two of his

September 26, 1996, police detectives questioned Chester after reading him his *Miranda* rights. Chester admitted that he had participated in the carjackings and robberies detailed above. He also admitted to shooting at Officer Roach.

Chester and Terry escaped from custody several months later. In the early morning hours of September 7, 1997, police officers spotted two men in downtown Memphis driving a GMC pickup truck that had been reported stolen in a carjacking a few days earlier. A high speed chase ensued. At one point, the pickup truck slowed down momentarily and Chester jumped out from the passenger side of the vehicle. The pickup then sped off, eluding the police. The police apprehended Chester after a brief chase. When he was caught, Chester was wearing a high quality bullet-proof vest and a handgun holster that held a loaded handgun clip containing .380 caliber ammunition. Officers found a .380-caliber Smith & Wesson handgun on the ground at the spot where Chester had jumped out of the pickup truck.

### B.   Procedural background

On July 24, 1998, a jury convicted Chester on all twenty-six counts of the indictment. The district court sentenced him to a total term of life plus 205 years, to be served consecutively. Chester was also ordered to pay restitution of $23,890 to the various victims of his crimes.

### II.   ANALYSIS

### A.   Conviction as to counts three and four—attempted robbery

Count three of the indictment charged Chester with attempting to rob the Kroger grocery store on August 26, 1996 in violation of the Hobbs Act, 18 U.S.C. § 1951. Count four charged Chester with carrying and using a firearm during and in relation to this attempted robbery. Chester claims that there was insufficient proof to support his convictions on these two counts because the evidence, at most, supports a

finding that he intended to burglarize the Kroger store, not rob it.

A conviction must be sustained if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In reviewing sufficiency of the evidence claims, a court must view the evidence in the light most favorable to the prosecution. *See United States v. Talley*, 164 F.3d 989, 996 (6th Cir.), *cert. denied*, 526 U.S. 1137 (1999) . Robbery is defined as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury . . . ." 18 U.S.C. § 1951(b). Burglary, in contrast, does not require the use or threat of force, and consists simply of the unlawful or unprivileged entry into a building or structure with the intent to commit a crime. *See Taylor v. United States*, 495 U.S. 575, 599 (1990).

Conviction for attempting to commit a crime requires "[t]he intent to finish the crime, coupled with affirmative acts toward that end." *United States v. Calloway*, 116 F.3d 1129, 1136 (6th Cir. 1997). Once a defendant takes a "substantial step" towards the completion of the crime, however, abandonment of the crime is not a defense. *United States v. Shelton*, 30 F.3d 702, 705-06 (6th Cir. 1994).

Chester admitted that he and his brother began to drill a hole in the Kroger store's roof with the intent to enter and commit a crime. The relevant question, then, is whether their intent was to steal from the store and leave before it opened, or to wait inside for an employee to arrive and commit a robbery.

When viewed in the light most favorable to the government, the facts support a finding that the Adams brothers intended to rob the Kroger store. Both men were carrying guns that morning and, until they were interrupted by the store's alarm, they were following the identical plan that they successfully executed three days later in robbing the

Walgreens drugstore. A reasonable trier of fact could conclude from this circumstantial evidence that the Adams brothers intended to rob the Kroger store.

**B.    Sentencing as to counts thirteen, fourteen, twenty-five, and twenty-six—felony possession of a firearm or ammunition**

Chester next challenges the district court's imposition of separate sentences for four counts of being a felon in possession of a firearm or ammunition. These counts are based upon his possession of three handguns and one ammunition clip. The appropriate test when multiple weapons are confiscated is set forth in *United States v. Rosenbarger*, 536 F.2d 715, 721 (6th Cir. 1976): "[O]nly one offense is charged under the terms of § 1202(a)(1) regardless of the number of firearms involved, absent a showing that the firearms were stored or acquired at different times or places." It is the government's burden to establish separate offenses under the statute. *See id.*

The government met its burden in this case as to three of the four counts. It is clear from the face of the indictment that the Bryco 9-millimeter handgun charged in count thirteen, the Ruger 9-millimeter handgun charged in count fourteen, and the Smith & Wesson .380-caliber handgun charged in count twenty-five were each discovered by the police on separate occasions and in different places. Each gun therefore properly served as the basis for a separate violation of 18 U.S.C. § 922(g). *See United States v. Killebrew*, 560 F.2d 729, 734 (6th Cir. 1977) (stating, for the guidance of the district court on remand, that a conviction on two separate counts of firearms possession was appropriate where the evidence indicated that the defendant had acquired the two weapons on separate occasions).

Chester nevertheless argues that the district court erred by failing to explicitly instruct the jury to determine whether these weapons were separately stored or acquired. Because Chester failed to contemporaneously object to the court's failure to give an instruction on separate possession, we