**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sylvester ACCARDO, Jr., Defendant–
Appellant.**

**No. 00–5252.**

United States Court of Appeals,
Sixth Circuit.

Dec. 21, 2001.

Before CLAY and JONES, Circuit Judges; and DOWD, District Judge.[*]

DOWD, District Judge.

## I. Introduction

Appellant, Sylvester Accardo, Jr., was convicted of mail fraud, following a jury trial. He was sentenced to a term of 30 months and ordered to pay restitution in the sum of $239,954.39. Accardo was one of nine defendants charged with participating in a conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. The other

[*] The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

eight defendants pled guilty and received lesser sentences. The indictment charged that the defendants engaged in a conspiracy to defraud the Public Service Electric and Gas Company of New Jersey ("Public Service") by cashing approximately $250,000 in refund checks stolen by its employee, co-defendant Thomas Naturale. The conspiracy included a distribution of the stolen checks to a network of check cashers who deposited the checks, then withdrew the funds using the United States mails to complete the distribution.

The criminal conduct began with the theft of the checks by co-defendant Thomas Naturale, a bookkeeper for Public Service. He then recruited two deputy sheriffs from Pike County, Pennsylvania, the appellant Accardo and co-defendant Joe Andia, to assist in converting the stolen checks to cash. The appellant and Andia, in turn, recruited check cashers. Andia recruited his brother-in-law and co-defendant, Gregory Cannon, and Cannon's common law wife, Lisa Bivona, also a co-defendant. The appellant eventually recruited his brother, John Accardo, and Accardo's common law wife, Sharon Bininger. Cannon, Bivona, John Accardo and Bininger all participated in cashing the stolen checks. Thomas Naturale's brother, co-defendant John Naturale, assisted Thomas Naturale in distributing the stolen checks. Co-defendant Elaine Naturale cashed and deposited three of the stolen checks in a joint account she maintained with her husband Thomas Naturale.

## II. The Calculation of the Sentencing Guidelines

Accardo does not challenge his conviction, only his sentence. The other defendants pled guilty and received lesser sen-

tences. Many of the sentences were handled by virtue of a transfer to the District Court of New Jersey pursuant to Fed.R.Crim.P. 20. Accardo's primary contention is that his sentence was disproportionate to the lesser sentences of the other eight defendants. Based on that contention, Accardo argues that this court should vacate his sentence of 30 months and remand for resentencing.

The district court determined that Accardo's adjusted offense level was 18, based on an offense level of six plus eight levels for the loss determined to be in excess of $200,000 plus two levels for more than minimal planning plus two levels for his role in the offense. The district court also fixed the Criminal History at II, over objection, and denied both a reduction for acceptance of responsibility and a downward departure. The resulting sentencing range was 30 to 37 months and the district court sentenced at the low end of the range.

Accardo also disputes both the calculation of the adjusted offense level at 18 and the determination that his Criminal History level was II. He argues that the district court erred, first, in finding that the loss was in excess of $200,000; second, in finding the Criminal History Category to be II; third, in refusing to grant an acceptance of responsibility credit, and fourth, in refusing to grant a downward departure. None of the four attacks on the computation of the adjusted offense level and the Criminal History has merit.

The Presentence Report accurately attributes a loss of $239,954.36 to Accardo. U.S.S.G. § 2F1.1(b)(1)(I) calls for an addition of eight levels at such a loss. Accardo was on probation for the offense that provided one Criminal History point when his criminal conduct in this case began. Thus, the addition of two levels, to take Accardo to Criminal History II, was correct. As

for a credit for acceptance of responsibility, Accardo chose to go to trial and, even after his conviction, continued to deny that he was an active participant in the conspiracy. Finally, the district court acknowledged Accardo's motion for a downward departure based on his family circumstances, but declined to grant the same after finding that the circumstances were not present to an exceptional degree to justify such a downward departure.

We move to a discussion of the primary contention advanced by Accardo: that he received, in comparison to the other eight defendants who pled guilty, a disparate or disproportionate sentence.

### III. The Sentences of the Other Eight Defendants

Thomas Naturale pled guilty and was sentenced by a Rule 20 transfer in New Jersey to a term of imprisonment of 15 months. He was ordered to make restitution in the amount of $10,000. Thomas Naturale testified for the government in the appellant's trial.

John Naturale pled guilty and was sentenced by a Rule 20 transfer in New Jersey to a term of imprisonment of 12 months and one day. He was ordered to make restitution in the sum of $36,000 and pay a fine of $2,000. John Naturale testified for the government in the appellant's trial.

Joseph Andia pled guilty and was sentenced to a term of 5 years of probation, but with six months home detention, and ordered to make restitution in the amount of $95,494.89. Andia testified for the government in the appellant's trial.

Gregory Cannon pled guilty and was sentenced by a Rule 20 transfer in New Jersey to a term of 5 years of probation. He was ordered to make restitution in the

amount of $14,400. Cannon testified for the government at appellant's trial.

Lisa Bivona pled guilty and was sentenced in New Jersey to a term of 5 years of probation and ordered to make restitution in the amount of $14,400. She did not testify in the appellant's trial.

Elaine Naturale pled guilty and was sentenced in New Jersey to a term of imprisonment of 6 months and ordered to make restitution in the amount of $3,600. She did not testify in the appellant's trial.

John Accardo was sentenced to a term of imprisonment of 12 months and one day and ordered to make restitution in the sum of $144,459.47.

Sharon Bininger was sentenced to a term of imprisonment of 12 months and one day and ordered to make restitution in the sum of $144,459.17.

## IV. The Claim of a Disproportionate Sentence

█ Co-defendants Thomas Naturale, John Naturale, Gregory Cannon, Lisa Bivona and Elaine Naturale were sentenced in New Jersey based on their Rule 20 motions. Thomas Naturale appears, without question, to be the most culpable of the other eight defendants. He received a sentence of 15 months, only half that meted out to the appellant.

Accardo does not dispute the calculation of his adjusted offense level of 18, but does challenge his Criminal History of II, with a resulting sentencing range of 30 to 37 months. Accardo claims that he was subjected to a disproportionate sentence when compared to the 15-month sentence of Thomas Naturale, the instigator of the criminal conduct. Accardo contends that, assuming his four specific challenges to the calculation of his sentence fail, in any event he received a disproportionate sentence

when compared to the sentences of the other eight defendants.

Accardo acknowledges that many of the sentences of the other defendants followed his sentence, but he argues that his sentence exceeds the national average for fraud using the United States Sentencing Commission's 1999 Source Book of Federal Sentencing Statistics (4th ed.) and, therefore, his sentence constitutes an abuse of discretion on the part of the district judge.

There is no requirement that the sentencing judge in a fraud case consult national averages as an added burden to determining the offense level and the Criminal History. Many factors are involved in computing the adjusted offense level in a fraud case including, as in this case, the dollar amount of the fraudulent conduct, the role in the offense, the issue of "more than minimal planning," a possible reduction for acceptance of responsibility, and the possibility of a downward departure for substantial assistance. In this case, had Accardo decided to cooperate with the government and earned a two-level departure for substantial assistance and a three-level adjustment downward for acceptance of responsibility, his final adjusted offense level would have been 13 and, with a Criminal History of II, the sentence range would have been 15–21 months with the strong possibility of a sentence of 15 months.

In support of his request for a remand for sentencing purposes, Accardo has advanced the teachings of the Seventh Circuit in two of its opinions addressing the subject of unjustified disparity in the sentences of co-conspirators. *See United States v. McMutuary,* 217 F.3d 477, 483–85 n. 1 (7th Cir.2000); *United States v. Meza,* 127 F.3d 545, 549 (7th Cir.1996);. However, the predicate for such a remand is an "unjustified disparity." We find no such "unjustified disparity" in this case.

We find no error in the 30 month sentence imposed in this case.

## V. The Order of Restitution in the sum of $239,954.36

The pre-sentence report concluded at paragraph 75 that Accardo, married with two children, had a negative net worth of $14,467 and a negative net monthly cash flow. In light of these circumstances, Accardo challenges the district court's order directing that the total amount of restitution be paid "jointly and severally with the co-defendants in this case."

■ The government contends that this issue is reviewable only for plain error because Accardo raises this issue for the first time on appeal. During the sentencing hearing, counsel for Accardo objected to the district court's calculation of the amount of loss attributable to Accardo. This objection, however, was made with respect to the district court's calculation of Accardo's specific offense characteristic and did not address Accardo's ability to pay restitution. The only discussion regarding Accardo's ability to pay restitution occurred on page 27 of the sentencing hearing transcript, at which point counsel for Accardo stated the following:

> If your Honor, please, bottom line that we get down to here is we got a total offense level of 18, which is very substantial, and dictates a penalty of what, 32 to 36, 7 months and even if the Court sentences him at the low end of the guidelines. You can look and you can see what, what his financial position is. Mr. Abney has related all that information. He has a negative net worth of $14,000.00. Home mortgage $600.00, electricity 108. These people are not living extravagantly. I mean he's not living in a $300,000.00 home up there in Dingmans Ferry. Judge, it's a sympathy argument here. I mean I don't know how else to say it, but it's a, it's a

devastating thing to his family and ... I think I've said all I know to say.

(Doc. No. 140, pp. 27–28). This exchange, however, is nothing more than a "sympathy argument," as referred to by Accardo's counsel, and does not amount to an objection to the district court's order requiring Accardo to pay restitution based on the court's failure to consider Accardo's financial resources and needs. Accordingly, Accardo must demonstrate that the district court committed plain error. *See United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998).

To establish plain error on the part of the district court, Accardo must prove the following: (1) that the district court committed an error; (2) that the error was obvious or clear; (3) that the error affected his substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings. *Id.* at 948.

In determining the amount of restitution to be paid by a defendant, the sentencing court "shall consider ... the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a). Moreover, this Court has, in past cases, set aside restitution orders where the sentencing court inadequately considered the defendant's ability to pay. *See United States v. Dunigan,* 163 F.3d 979, 982 (6th Cir.1999) (reversing judgment of district court on grounds that defendant's ability to pay was not considered).

■ Despite the stricter plain error standard of review applicable to this issue, the Court concludes that the district court's failure to consider Accardo's financial circumstances in determining the amount of restitution constitutes plain error. Consideration of Accardo's ability to pay restitution is mandated by statute and

the district court's failure to consider his financial circumstances amounts to obvious and clear error. Moreover, the district court's failure to consider Accardo's financial circumstances affects his substantial rights resulting in an adverse impact, which seriously affects the fairness of the judicial proceedings. Accordingly, the Court remands this case so that the amount of restitution may be reconsidered in light of Accardo's ability to pay.

## VI. Conclusion

Finding no reversible error in the sentence of Accardo to a period of 30 months and a period of supervised release of three years is **AFFIRMED.** The district court's order of restitution in the sum of $239,954.36 is **VACATED** and **REMANDED** for reconsideration in accordance with this opinion.