NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0576n.06

No. 16-6394

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| AMUARY VILLA, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: KEITH, McKEAGUE, and STRANCH, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge.** Appellant Amuary Villa pled guilty to one count of conspiracy, in violation of 18 U.S.C. § 371, and one count of theft of an interstate shipment, in violation of 18 U.S.C. § 659. Villa was sentenced to 77 months of incarceration. Villa appeals his sentence, arguing that the district court infringed on his procedural and substantive due process rights by failing to find that two prior federal convictions were relevant conduct under United States Sentencing Guidelines ("U.S.S.G") § 1B1.3. Moreover, Villa contends that the district court not only failed to run his sentence concurrent to the two prior federal offenses that are related to this appeal, but also improperly ordered that Villa pay restitution without first determining whether or not Villa had the ability to pay restitution. We disagree and affirm.

## I.    BACKGROUND

### A.  *Instant Offense*

On the evening of March 19, 2011 and the early hours of March 20, 2011, Appellant Amuary Villa ("Villa"), Camilo Rodriguez-Hernandez, Ivan Romero, unindicted co-conspirator Amed Villa ("Amed"), and other co-conspirators burglarized the Core-Mark Cigarette Warehouse in Leitchfield, Kentucky.  The group stole approximately 34,006 cartons of cigarettes valued at $1,486,164.45.

The conspirators conducted research on the Core-Mark Warehouse, performed pre-operational surveillance, burglarized the warehouse by cutting a hole in the roof and disabling the alarm system, and subsequently loaded the goods onto a stolen trailer and semi-tractor.  Villa and his brother Amed scaled the roof and disabled the alarm system while the remaining conspirators performed the other tasks central to the burglary.  After the burglary, the stolen cigarettes were transported to the New York/New Jersey area for sale.

On December 11, 2013, Villa and his co-conspirators were indicted in the Western District of Kentucky for (1) conspiracy, in violation of 18 U.S.C. § 371; and, (2) aiding and abetting theft of an interstate shipment, in violation of 18 U.S.C. §§ 659 and 2.  (R 1. Indictment at 39–42).  Villa pled guilty to both counts of the indictment, without a plea agreement, on May 17, 2016.  (R. 90 Judgment at 398).  Prior to sentencing, a Presentence Investigation Report ("PSIR") was prepared and revealed two prior convictions in Florida and Connecticut, respectively, that are relevant to this appeal.  (R. 84, PSIR).

### B.  *Prior Convictions*

With respect to the Florida conviction, on November 26, 2012, Villa was sentenced to 140 months in custody for (1) conspiracy to sell stolen goods, in violation of 18 U.S.C. § 371,

and (2) possession of stolen goods, in violation of 18 U.S.C. § 2315. These convictions stemmed from Villa's role in the sale of pharmaceutical drugs in the Southern District of Florida that had been stolen from the Eli Lilly warehouse in Enfield, Connecticut. (R. 84, PSIR ¶ 47).

Relatedly, on April 10, 2015, Villa was sentenced in the District of Connecticut to 98 months in custody for (1) conspiracy to commit theft from an interstate shipment, in violation of 18 U.S.C. § 371; (2) four counts of theft from an interstate shipment, in violation of 18 U.S.C. § 659; and, (3) interstate transportation of stolen property, in violation of 18 U.S.C. § 2314. These convictions stemmed from a conspiracy to steal pharmaceuticals from the Eli Lilly warehouse in Enfield, Connecticut. Restitution was calculated to be $60,994,213.00. (R. 84, PSIR ¶ 48). The sentence resulting from the Connecticut conviction ran concurrently with the 140 month sentence for the Florida conviction. (R. 84, PSIR, ¶¶ 47-48).

### C. Criminal History and Offense Level Calculation

With respect to the sentence that is subject to this appeal, which relates to the burglary of the Core-Mark warehouse in Kentucky, the PSIR calculated Villa's base offense level as 6. Additionally, Villa's offense level was increased by 14 in light of his specific offense conduct, pursuant to U.S.S.G. § 2B1.1(b)(1)(H), for a loss of more than $550,000.00 and less than $1,500,000.00. Villa's offense level was further increased by two under U.S.S.G. § 2B1.1(b)(14) because he was involved in an organized scheme to steal a cargo load, which yielded an adjusted offense level of 22. After Villa's offense level was reduced by three for acceptance of responsibility and timely notice to plead guilty, pursuant to U.S.S.G. §§ 3E1.1(a)-(b), his Total Offense Level was 19. (R. 84, PSIR ¶¶ 22–32).

The PSIR reflected that Villa's criminal history score was 15, due in large part to Villa's extensive criminal history for burglary and theft. (*Id.* ¶¶ 34–50). This score placed him in

criminal history category VI. (*Id.*) Villa's criminal history category included the 2012 conviction in the Southern District of Florida. (*Id.*) The District of Connecticut sentenced Villa for the same conduct, namely, theft of pharmaceuticals from an Eli Lilly Warehouse that were later sold in Florida. (*Id.* ¶ 48). Accordingly, the Florida and Connecticut offenses were treated as a single sentence in the PSIR; Villa received only a combined three point increase in his criminal history category for both convictions.

During the sentencing hearing on August 30, 2016, the District Court found by a preponderance of the evidence that the intended loss in the case exceeded $1,500,000.00, thereby raising Villa's Total Offense Level to 21. (R. 100, Sentencing Hearing Transcript at 442). In conjunction with a criminal history category of VI, the applicable Guidelines range was 77 to 96 months of incarceration. At sentencing, Villa requested that the sentence in the present case run concurrently with his prior Connecticut and Florida sentences. (*Id.* at 450). Villa argued that such a sentence was warranted pursuant to U.S.S.G. § 5G1.3(b) because the actions underlying the prior convictions were relevant conduct, under U.S.S.G. § 1B1.3. (*Id.* at 450-51). Villa also maintained that he should not have received 3 point increase in his criminal history category for the Florida and Connecticut sentences, because those offenses were relevant conduct U.S.S.G. § 4A1.2. (*Id.* at 451).

The district court rejected Villa's contentions, and thoroughly explained why the Florida and Connecticut offenses were not relevant conduct or part of a common scheme. (*Id.* at 462–63). The district court then sentenced Villa to 77 months of incarceration, to run consecutive to the Florida and Connecticut sentences. (*Id.* at 466). The Court also ordered that Villa pay $1,486,164.45 in restitution. (*Id.*) This timely appeal followed.

## II.     DISCUSSION

### A.     Standard of Review

We review a district court's criminal sentence for procedural and substantive reasonableness under "a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). "An abuse of discretion occurs when the reviewing court is left with the definite and firm conviction that the sentencing court committed a clear error of judgment." *United States v. Coppenger*, 775 F.3d 799, 802-03 (6th Cir. 2015) (citing *United States v. Batti*, 631 F.,3d 371, 379 (6th Cir. 2011)). Moreover, "[a]n abuse of discretion occurs when a sentencing court relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *Id.* at 803 (citing *United States v. Munoz*, 605 F.3d 359, 366 (6th Cir. 2010)). "[T]he district court's interpretation of the Guidelines and mixed questions of law and fact are reviewed *de novo* while factual findings are reviewed for clear error." *United States v. Schock*, 862 F.3d 563, 566–67 (6th Cir. 2017) (quoting *United States v. Tolbert*, 688 F.3d 798, 800 (6th Cir. 2012)). We are "deferential to the district court's application of the Guidelines to the facts of a given case." *Id.* at 567 (quoting *United States v. Simmerman*, 850 F.3d 829, 832 (6th Cir. 2017)).

With respect to procedural reasonableness, "[f]irst, the Court must 'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *United States v. Adkins*, 729 F.3d 559, 563 (6th Cir. 2013) (quoting *Gall*, 552 U.S. at 51). "If no procedural error occurred, the Court must then 'consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion

5

standard.'" *Id.* (quoting *Gall*, 552 U.S. at 51). "The sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). "The Court affords a rebuttable presumption of substantive reasonableness to sentences falling within the applicable Guidelines range." *Adkins*, 729 F.3d at 564 (citing *Brooks*, 628 F.3d at 796).

## B.    Analysis

### 1.    The Florida and Connecticut Convictions Were Not Relevant Conduct

Villa disputes the district court's conclusion that the Florida and Connecticut convictions were not relevant conduct, and argues that the district court erred in concluding that the Kentucky burglary was not relevant conduct. He further contends that the district court abused its discretion by imposing his sentence for the Core-Mark Warehouse robbery consecutive to the Florida and Connecticut sentences. Villa maintains that his sentence was therefore procedurally and substantively unreasonable.

Villa argues that under U.S.S.G. § 1B1.3(a)(2), the conduct involved in the burglary of the Eli Lilly warehouse in Connecticut and the subsequent sale of the stolen pharmaceuticals is relevant conduct to the burglary of the Core-Mark warehouse in Kentucky and the subsequent sale of those stolen cigarettes in New Jersey. He points to what he views as the same course of conduct and common scheme among essentially the same group of conspirators, along with the overlapping time period for the offenses. App. Br. at 18.

Section 1B1.3(a)(2) addresses "conduct that is 'part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Henry*, 819 F.3d 856, 864 (6th Cir. 2016) (citing U.S.S.G. § 1B1.3(a)(2)). To qualify as a "common scheme or plan,"

6

the relevant actions must "be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." *United States v. Hodge*, 805 F.3d 675, 683 (6th Cir. 2015) (quoting *United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996)). Relatedly, a defendant's actions form "the same course of conduct 'if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.'" *Id.* (quoting U.S.S.G. § 1B1.3(a)(2), comment. (n.9(B))[1]. "Three factors guide this analysis: 'the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.'" *Id.* (quoting *Hill*, 79 F.3d at 1481-82).

In weighing the aforementioned factors, we hold that the district court properly determined that Villa's prior federal convictions were not relevant conduct. With respect to whether the prior convictions qualify as a common scheme or plan, the victim in the Florida/Connecticut burglary, Eli Lilly, was different from the victim in the instant offense, Core-Mark. Moreover, the purpose of the Eli Lilly burglary was to steal pharmaceuticals, while the purpose of the Core-Mark burglary was to steal tobacco. The Eli Lilly burglary offense involved 10 co-defendants, while there were only 2 co-defendants involved here. Although Villa's brother Amed participated in the burglary of Eli Lilly and the burglary of Core-Mark, this fact does not warrant a holding of abuse of discretion, even in light of a similar *modus operandi*.

Moreover, the Florida/Connecticut convictions were not part of the same course of conduct. There is not regularity or repetition of the offenses, as each offense was a separate burglary that occurred one year apart from each other. Notwithstanding some overlap of the

---

[1] The pertinent parts of Section § 1B1.3(a)(2), Application Note 9(B), which address "same course of conduct or common scheme or plan," are now found at Application Note 5(B). This language was found at Application Note 5(B) at the time of Villa's sentencing for the instant offense.

timeframe of the offenses, the Eli Lilly burglary took place in March 2010, while the Core-Mark burglary transpired in March 2011. Furthermore, the offenses are not sufficiently connected or related to each other so as to be considered an ongoing series of offenses, a single episode, or a spree. Accordingly, the district court did not err in its conclusion that the nexus between the prior convictions and the instant matter is too attenuated to be considered the same course of conduct.

Our holding on the issue of relevant conduct means that the district court did not abuse its discretion in running Villa's sentence in this matter consecutive to the Florida/Connecticut sentence. "When a defendant is serving an undischarged prior sentence, the district court may impose a consecutive or concurrent sentence." *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009) (citing 18 U.S.C. § 3584). "The court must consider the factors listed in 18 U.S.C. § 3553(a) in making this determination." *Id.* (citing 18 U.S.C. § 3584(b)). "Furthermore, the court should also consider the relevant Guidelines recommendations and policy statements." *Id.* (citing 18 U.S.C. § 3553(a)(4)).

Section 5G1.3 of the Sentencing Guidelines addresses undischarged imprisonment. U.S.S.G. § 5G1.3. In particular, subsection (d) of § 5G1.3 discusses cases involving undischarged terms of imprisonment absent of relevant conduct, and provides that the "instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(d). Application Note 4(A) to § 5G1.3 provides further guidance, noting that a sentencing court should consider:

> (i)    the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));
> (ii)    the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;

> > (iii)    the time served on the undischarged sentence and the time likely to be served before release;
> >
> > (iv)    the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and
> >
> > (v)    any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

U.S.S.G. § 5G1.3 cmt. n.4(A).

"When 'a district court has considered the factors listed in [18 U.S.C.] § 3553(a) and the applicable Guidelines and policy statements in effect at the time of sentencing, the district court's decision whether to impose a concurrent or consecutive sentence pursuant to § 5G1.3 is discretionary.'" *United States v. Johnson*, 553 F.3d 990, 997 (6th Cir. 2009) (quoting *United States v. Watford*, 468 F.3d 891, 916 (6th Cir. 2006)). This discretion is not "unfettered," however. *Johnson*, 553 F.3d at 998. The record on appeal should reflect that the district court turned its attention to § 5G1.3 "and the relevant commentary in its determination of whether to impose a concurrent or consecutive sentence." *Id.* (quoting *United States v. Covert*, 117 F.3d 940, 945 (6th Cir. 1997)). A sentencing court should then "make[] generally clear the rationale under which it has imposed the consecutive sentence and [should] seek[] to ensure an appropriate incremental penalty for the instant offense." *Id.* (quoting *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998)).

Here, prior to imposing a sentence on Villa for the Core-Mark burglary that ran consecutive to the Florida/Connecticut conviction, the district court noted that Villa had engaged in a "lifetime of burglary," and had stolen from other people "on a large scale." (R. 100, Sentencing Hearing Transcript at 465). The district court further referenced "certain objectives that [it] tries to achieve in sentencing, and that is to punish appropriately, give a sentence that's not more than necessary to accomplish all the objectives, to deter [defendants]." (*Id.*) The district court subsequently stated that the sentence "needs to promote respect for the law." (*Id.*)

9

Therefore, the district court clearly incorporated the § 3553(a) factors in imposing a sentence that ran consecutive to Villa's prior federal convictions at issue. The rationale is readily apparent from a review of the sentencing hearing transcript. Consequently, we hold that the district court did not abuse its discretion in imposing a consecutive sentence.

### 2. Villa's Criminal History Score Was Properly Calculated

As mentioned above, the district court did not err in its interpretation of the Guidelines's relevant conduct provisions. Because the district court applied the appropriate legal standard, we hold that the district court's calculation of Villa's criminal history score was proper and did not constitute an abuse of discretion. Villa contends on appeal that if the district court found his prior convictions to be relevant conduct, he would also get a six-point reduction in his criminal history score, which would result in a criminal history category of IV for sentencing purposes. Because Villa did not formally object to the criminal history calculation, we review for plain error. *Coppenger*, 775 F.3d at 803 (citing *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008)). To demonstrate plain error, Villa must show: "(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (citing *Vonner*, 516 F.3d at 386).

Under § 4A1.2 of the Sentencing Guidelines, a sentence imposed after the defendant's commencement of the instant offense—but prior to the sentencing on the instant offense—does not increase a defendant's criminal history score if the conduct underlying the previous sentence is relevant conduct under U.S.S.G. § 1B1.3. U.S.S.G. § 4A1.2 cmt. n1. We have already held that the district court did not err when it found that the Eli Lilly burglary was not relevant conduct with respect to the Core-Mark warehouse burglary. Accordingly, we hold that the

10

district court properly calculated Villa's criminal history category; Villa is therefore not entitled to a six-point reduction in his criminal history score.

3. **The District Court Properly Ordered Villa To Pay Restitution**

The district court did not err by ordering Villa to pay mandatory restitution. Villa now argues on appeal that the district court should have made a finding regarding his ability to pay restitution before imposing such an order. Because Villa did not object to this issue in the district court, we review for plain error. *Coppenger*, 775 F.3d at 803 (citation omitted).

The district court entered a restitution order pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A–3664. "The MVRA requires a defendant to pay restitution to identifiable victims who have suffered either physical injuries or pecuniary losses as a result of criminal offenses." *United States v. Vandeberg*, 201 F.3d 805, 812 (6th Cir. 2000) (citing 18 U.S.C. § 3663A(a)(1), § 3663A(c)(1)). "[R]estitution is mandatory—regardless of a defendant's financial situation—when a defendant is convicted of . . . an offense against property . . . ." *Id.* (citing 18 U.S.C. § 3663A(c)(1)(A); § 3664(f)(1)(A)).

Here, the MVRA mandates restitution because Villa was convicted of an offense against property. *Vandeberg* is instructive, as it notes that restitution is mandatory under the MVRA irrespective of the defendant's ability to pay. 201 F.3d at 812. To the extent that Villa cites our decision in *United States v. Dunigan*, 163 F.3d 979 (6th Cir. 1999) to support his proposition that the restitution order must be vacated, this argument is unavailing. In *Dunigan*, the district court ordered an indigent defendant to pay $311,505 within the three-year period of his supervised release. *Id.* at 981. On appeal, this court held that the district court abused its discretion in ordering the restitution and stated that, "absent a miracle," such a payment would be impossible within that time period. *Id.* at 982.

The district court here, however, did sufficiently consider Villa's financial circumstances. The district court was furnished with Villa's PSIR, which accounted for Villa's financial circumstances and obligations. The district court elected to waive the fine and costs associated with incarceration specifically due to Villa's inability to pay. (R 90, PID 403). Consequently, we hold the district court adequately considered Villa's financial circumstances and imposed the statutorily required restitution. Therefore, the district court did not abuse its discretion.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's sentence in this matter.